ACRE v. Ross, Administrator.

1. The act of 1819 does not divest the Courts of law and equity in this State, of a general superintending control over the pleadings and proceedings of suitors therein; they may set aside office judgments, whether of default or non-suit, upon good cause shewn at the succeeding term, even after such judgments have been perfected.

2. Motions to set aside such judgments, during the term in which they are perfected, are addressed to the sound discretion of the Court, from which there is no appeal.

3. They have complete power over their own judgments and proceedings in term, during which they may alter or correct them; and whether they may set aside judgment by default, to receive other plea than one to the merits, is also matter of discretion.

4. Whether the statute of limitations, when pleaded by an executor or administrator, will not be received more favorably than in other cases, *semble*.

5. A party can have no hearing in an appellate Court, upon the overruling of his demurrer, when it was afterwards withdrawn, and an issue formed to the country; the case then stands as if no demurrer had been filed.

6. Presentment of a claim to one of two representatives, is notice to both, and on trial, proof is admissible, that plaintiff's account was presented to defendant's co-administratrix, in her life time.

7. Where letters of administration were granted the 15th May, 1824, and the advertisement thereof, continued the proper length of time in a public newspaper, stated that they were granted the 17th instant, the advertisement itself being dated May 25, omitting the year, which was proven extraneously to be 1824, it was charged that the misstatement was an immaterial one: held that in this there was no error.

THIS was an action of assumpsit, brought by Samuel Acre against Jack F. Ross, as surviving administrator of Turner Starke, deceased, to recover for professional services rendered his intestate in his lifetime, by the plaintiff as an attorney at law. The writ was returnable to a special term in February, 1827, of Mobile Circuit Court. No plea being filed within the time prescribed, the plaintiff claimed an office judgment by default, as appears by the following entry made on the trial docket for April term

of said Court, in the same year: "In this case the plaintiff claims judgment by default, for want of a plea, this 9th day of June, 1827, Chester Root, attorney for plaintiff." On the 13th ibid, the defendant filed his plea of the general issue. At February term, 1828, an order was made to perfect the office judgment by default; but before it was perfected, upon good cause being shewn, and all costs paid by the defendant, it was set aside, and the defendant allowed to plead further, the statute of limitations; in which it was alleged that "letters of administration were granted to defendant and Catherine Starke, on the 17th May, 1824, and that the claim had not been presented to the defendant within" &c. To this plea the plaintiff demurred, and after argument, it was withdrawn, and leave given him to reply. The cause was tried at the spring term, 1829, when a verdict was returned for the defendant. From a bill of exceptions sealed at the trial, it appears as was shewn by the record of the County Court, that the defendant and his co-administratrix were appointed and qualified on the 17th of April, 1824. That the advertisement thereof was then offered in evidence, to which the plaintiff objected, but his objection was overruled, and it was read, setting forth that letters of administration were, on the 17th instant, granted to defendant and C. Starke, and requiring all persons to present their claims, &c. bearing date May 25th, omitting the year. It further appears that the letters of administration were then read, and bore teste the third Saturday of May, 1824, which was proven in fact to be the 15th, and not the 17th day of the month, as stated in the advertisement. The defendant then proved that the advertisement had been inserted nine successive weeks in the "Mobile Commercial Register," a paper printed in the city regularly once a week, and that the number of the paper in which the advertisement first appeared, was issued in May, 1824. It was also proved that the plaintiff was a lawyer residing in the city and a subscriber to the paper. Upon these facts the Court charged the jury that an eminent judge had said, the statute of limitations was a noble one, and when supported by evidence, was a legal defence; that the difference between the true date of the grant of letters of administration, and that stated in the advertisement, was an immaterial one; and that if it had any consequence, it was that of a benefit to the plaintiff, by giving him a longer time, and should not defeat the plea of the statute, which would commence running, at least from the date of the

37

JANUARY 1831 advertisement; finally, if they believed the advertisement had been published as shewn in the evidence, the law was substantially complied with.

Acre
v.
Ross, Administrator.

1. It is here assigned for error, that the Court below erred in setting aside the office judgment by default, after an order had been made in term time to perfect it, to let in the plea of the statute of limitations. 2. That the plea itself was defective, and the demurrer thereto should have been sustained. 3. That the Court erred in the charge given to the jury, as set forth in the bill of exceptions.

ACRE, for plaintiff in error. The judgment was set aside by the Court below, and the plea of the statute of limitations was allowed to be filed. Where judgment is perfected it is final, and there is no discretion in the Court to set it aside. I admit if it be in *fieri* and not perfected, it might be set aside; but here it was perfect. It is a judgment of the Court, and the right is vested, and no circumstances can be shewn to change it, more especially to let in a plea which does not go to the merits. It is not a sound discretion at any time, but here it is no longer a question of discretion, but of right. The statute is positive and absolute.[a]

*a* Laws of Ala 478—9

The Court erred in overruling the demurrer to the plea of the statute of limitations. The plea was bad; it merely stated the claim was not presented to him, the defendant, when it may have been presented to C. Starke in her life time, which would be good, and such is the fair presumption. The statute giving eighteen months for presenting claims against estates of deceased persons, is similar in its nature to the statute of limitations; it must always be pleaded and well pleaded, so as not to mislead the plaintiff; it must also be taken most strongly against the pleader. Here there were two administrators, and the advertisement is said to have been made by both.

The defence of the statute was insufficient, because its provisions were not complied with.[b] The time of granting letters of administration was not shewn. This was deemed essential by the legislature, for the obvious reasons that the public should know when their claims are barred. Here there is a mistake of more than a month. The granting of letters is not the appointment.[c] The judgment of the Court shews the time of the grant of administration, and the advertisement should have stated it truly. It is not sufficient to say it was for the benefit of the opposite

*b* Laws of Ala. 337, Sec. 2d and 3d.

*c* 1 Cranch R.

party, for in fact it was not. The advertisement cut him off one month; instead of eighteen months, he had only seventeen months to file his claim. Another objection to the advertisement is, it has no date; the year is not stated; it may have been several years before. The year is as essential as the day; we are not to look at the newspaper for the year; the advertisement alone is to be regarded. This compliance with the statute must be strict; its requirements are as conditions precedent, which he must observe before he can claim its benefit. Time is essential here, and a day as much so as a year; the rule must be strict and general. The manner of the charge below must have had influence with the jury. In *Canterfield v. England*,[a] the plea of the statute is said to be a dishonest one. Mansfield was an able judge, and he did not pronounce it a noble statute.

JANUARY 1831

Acre
v.
Ross, Administrator.

a 5 Bur. R.

HALL, for defendant in error. For setting aside the judgment by default below, good cause was shewn, and the costs were paid. It was not a default final, but interlocutory. To the ground that the statute of limitations cannot be pleaded after a judgment by default had been set aside, it is a sufficient answer to say, such has been the English practice.[b] It was a matter entirely discretionary to set the judgment aside; during a term the judge may alter any order made by him; all his acts are in his breast until the minutes are signed. This is the doctrine of amendments. No writ of error lies on a judgment by default not final. This Court cannot now see that the cause for setting aside the judgment was insufficient; the plaintiff should have adduced facts, shewing that it was wrongfully set aside. The entry of claim was made on a trial docket of a previous term, and when the term was over, the docket was of no more force, nor could either party know any thing of it, when filed with the clerk and papers.

b 1 Bos. & P.
R. 228 and
the authorities there cited.

After discussion of demurrer below, the Court intimated an opinion, and the demurrer was withdrawn. The plaintiff could not do this and afterwards have advantage of it in error; it is now no part of the record, and the Court here can say whether the plea is good, independently of the demurrer. It is argued the plea is bad; but it is replied to. The suit was against Ross alone and individually. The replication should have rebutted the defence, and if the claim had been presented to C. Starke, he might have replied so. The presentment to her was good, but it

was known only to the plaintiff; Ross pleaded full defence as to himself, so far as he knew; the verdict cures the defect.[a]

It is also contended that the section of the statute requiring notice has not been complied with. If the administrator neglect to publish notice, he is liable, but the estate is protected. The first section of the act protects estates, and the second prescribes the duty of administrators. The advertisement must state the time when letters were granted, and if mistated, the claimant has a longer time; this is the only effect; the claim is not barred till eighteen months after advertisement. The administrator's bond was made on the 17th of May, until then, he could do no legal act. The advertisement was accurately and legally correct; as to the year, the newspaper was produced in Court, and was seen to be dated 1824.

ELLIOTT, on same side. I deny that the judgment below was perfected; the entry was made by Root, attorney, on the old docket. The law requires that the judgment shall be taken in the clerk's office in presence of the clerk. He was not present, and the old docket was *functus officio*. This Court will intend that the Court below exercised a legal discretion in the absence of the facts. In England, neither in ancient or modern times, has a plea of the statute of limitations been considered unconscientious; it has been only so called by Judge Story in a bill of exceptions. The statute of limitations referred to here is directory; it enjoins strictness on administrators, and is intended for good purposes. If the administrator had paid an account presented after eighteen months from letters granted, he would have violated his duty in paying it. The plea was good in substance, and the plaintiff elected to reply to it after withdrawing his demurrer. The object of all pleading, is to enable parties to reach their rights. The omission to aver a presentment to C. Starke could have been replied and full justice done. Under the plea even he might have proved such presentation, and verdict would have been for him. He is then in no wise injured.

Next ground arising out of the bill of exceptions, was there error in overruling the plaintiff's objection to reading the advertisement. It was a link in the defence, and the time was identified by the evidence. The bill of exceptions shews both the time of the advertisement and the time of granting letters of administration. It appeared

the legal period, in the regular paper printed at that time, and containing no misrecital; so that the case of *Marberry v. Maddison,*[a] does not apply. In granting letters of administration, it is usual to make a conditional order. The mere order does not make the administrator, until complied with; it was complied with the 17th May, before which they could not claim the administration.

JANUARY 1831

Acre
v.
Ross, Administrator.

[a] 1 Cranch R.

ACRE, in reply. It is contended that the judge can change his judgment any time during term. This is too broad; true he may grant a new trial, but that is very different. My position is correct; a right is vested by judgment, which only a revising tribunal can undo. Bossanquet and Puller have been cited, but there are contradictory authorities. In England they have their own rules established by Court, which they can modify, but here it is done by statute: the legislature has fixed the rules, and the Courts have no power to change them. If this suit had been on a note, judgment by default would have been final. There is no difference between the cases. As to entering the judgment, it could not have been done any where else, and is presumed to have been done with the consent of the clerk. There was no other docket on which it could be entered.

As to the advertisement, it was necessary that it should contain the proper dates, as the proper names, and the misrecital of time is fatal. That the newspaper was published in 1824 is not sufficient. It is imperative on the administrator to do what the statute requires. They were sworn as administrators on the day of their appointment; the issuing of letters is not the appointment; that is a clerical duty; letters are of no use except to give oyer.

By JUDGE TAYLOR. It is unnecessary to enter into a labored argument, to prove that the 7th section of the act of 1819, "to regulate the proceedings in the Courts of law and equity in this State," does not divest the Courts of a general superintending control, over the pleadings and other proceedings of suitors within those Courts. To sustain a contrary position, would divest our judicial tribunals of a power, essential to the object for which they have been erected, that of doing justice; and leave them the proper subjects for contempt and ridicule. Accordingly, the uniform practice under this statute has been, to set aside office judgments, whether of default or non-suit, upon

good cause shewn at the succeeding term, by the party, plaintiff or defendant, affected by the judgment. A motion to set aside such judgment, is always addressed to the sound discretion of the Court, from the exercise of which, there can be no appeal.

Acre v. Ross, Administrator.

If the Court can set aside such judgment at all, it is certain it can do so after an order for perfecting the judgment, and even after such order has been acted on; especially during the term at which it was made. The Court has complete power over its proceedings during the term, and may correct or alter its judgments and proceedings. But this is a point so plain, that it is useless to dwell upon it.

That the discretion of the Court goes no further than to admit pleas to the merits, after a judgment by default, has not been shewn: on the contrary, the cases cited by the defendant's counsel, from 1st Bosanquet and Buller,<sup>a</sup> are to the point in supporting a different doctrine. It is true that a Court will be unwilling to deprive a party of an advantage which he has thus obtained, for the purpose of admitting any other plea, than one which brings the merits in controversy. It may however be doubted whether the plea of the statute of limitations, when interposed by an executor or administrator, will not be viewed more favorably than in other cases. A representative might possibly jeopardize his own interest, by neglecting such a defence. It was certainly within the discretionary power of the Court to receive the plea in this instance.

*a* Page 228.

As regards the second point, it cannot now be made before this Court. If the plaintiff intended to rely upon his demurrer to the plea of the defendant, in the appellate Court, he should not have withdrawn it, and formed an issue to the country, after it was overruled. By doing this, the cause stands precisely as if no such demurrer had ever been filed, and presents no matter for investigation here. There can be no doubt however, that the presentment of a demand to one of two representatives, is notice to both, and on the trial of the issue, proof would have been admissible, that the plaintiff's account had been presented to the co-administratrix in her life time. It appears from the bill of exceptions, that the defendant and his co-administratrix were appointed and qualified on the 17th day of April, 1824; that they gave the notice required by law, in the "Mobile Commercial Register," a newspaper printed in the city of Mobile, within the time prescribed by the statute, which notice stated that "letters

of administration were, on the 17th instant, granted to the subscribers," &c. and which notice was dated "May 25th," without specifying the year; the paper however in which the publication first appeared, was issued in May, 1824, and the letters testamentary, bore date the third Saturday in May of that year, which was proved to have been the 15th, and not the 17th, as stated in the advertisement.

Upon this evidence, the Court charged the jury, that "the difference between the date of the letters and the time stated in the advertisement, was an immaterial difference, and did not on that account, destroy the defence." It is certain that in this charge there is no error. What injury could possibly have resulted to the plaintiff, or any other creditor of the decedant, from this mistake? None can be conceived. If errors of this kind could so far jeopardize the interests of representatives, as is contended for by the plaintiff's counsel, a mere mistake committed by a clerk in the hurry of business, might indeed produce disastrous consequences. Nor can the omission of the year in the date be at all material. All persons interested, were as perfectly informed to whom to make application, as the representatives of Turner Starke, deceased, as they could have been by any possible additions to the advertisement as it was published.

It is not considered necessary to decide, whether or not a failure to advertise according to the statute, would preclude a representative from pleading the statute of limitations, or as it is usually called of non-claim. The judgment must be affirmed, and in this opinion the Court is unanimous.

Judgment affirmed.

Crenshaw, not sitting.