(129 So. 46)

**SANDERS v. GERNERT BROS. LUM-
BER CO.**

6 Div. 187.

Supreme Court of Alabama.

May 29, 1930.

Rehearing Denied June 26, 1930.

Lange, Simpson & Brantley, of Birmingham, for appellant.

Stokely, Scrivner, Dominick & Smith, of Birmingham, for appellee.

470

said plea, under plea C, and the error was without injury. Vogler v. Manson, 200 Ala. 351, 76 So. 117.

While the practice of reading documents not in evidence in the preliminary opening statement of counsel to the jury is not to be commended, still, the letter from which the plaintiff's counsel read in this case was subsequently introduced in evidence, without objection, and the only objection made, at the time it was read in the preliminary statement, was that it had not been offered, and defendant's counsel had had no opportunity to inspect it. We are not of opinion that reversible error can be predicated on this ruling. In Loeb v. Webster, 213 Ala. 99, 104 So. 25, the objection was that the statement had no bearing upon the cause and was not material, and it was of a character that tended to prejudice the jury against the defendant.

To put the trial court in error for refusing the affirmative charge because of a variance between the averments and proof, it must appear from the record that the variance was brought to the attention of the trial court by proper objection to the evidence. Rule 34, Circuit and Inferior Court Practice; Code 1923, vol. 4, pp. 906, 907; Woodmen of the World v. Maynor, 209 Ala. 443, 96 So. 352.

The evidence shows that appellant purchased, or at least thought he purchased, a sawmill from Gernert-Castleman Lumber Company, a domestic corporation doing business in Selma, Ala., in 1923. The mill at that time was in possession of one McLendon, or McLendon and Pugh, under claim of ownership, they having theretofore purchased the same from the Alabama Machinery & Supply Company.

Viewing the evidence most favorably to the appellee, McLendon and Pugh had given a mortgage and notes to the Alabama Machinery & Supply Company on the mill to secure the purchase money.

The evidence shows that plaintiff, acting through and by the Gernert-Castleman Lumber Company, purchased and took over the notes and mortgage from the Alabama Machinery & Supply Company. Mr. Gernert, the president of the plaintiff corporation, testified: "In 1923 Gernert Brothers Lumber Company took over a mortgage on the McLendon saw mill. The Gernert Brothers Lumber Company gave a check to Gernert-Castleman Lumber Company for $2203.66 for the McLendon draft and received at the time certain papers which Mr. McLendon had given to the Alabama Machinery & Supply Company and to the Gernert-Castleman Lumber Company, securing the balance of the purchase money on the sawmill outfit. These papers presented to me are the original papers and transfer."

Thereafter on February 18, 1924, Mr. Dayton Castleman, who was the manager and had

**BROWN, J.**

The first ground of demurrer filed to the complaint, that "said complaint does not state facts sufficient to constitute a cause of action," is not sufficiently specific to present the objection that the complaint does not allege the due date of the note. Code 1923, § 9479; Henley v. Bush, 33 Ala. 642.

The statute, as was held in the cited case, not only abolishes general demurrers, but expressly prohibits the allowance of any objection not specifically stated in the demurrer; the object of the statute being to prevent surprises and to protect parties from injury in consequence of errors in pleadings not made until the time for amendment has passed. Henley v. Bush, supra; Denson v. Caddell, 201 Ala. 194, 77 So. 720.

Plea C, the demurrers to which were overruled, is in substance and legal effect identical with plea 9, and if error was committed in sustaining the demurrers to plea 9, defendant had full benefit of the matters set up in

entire charge of the operation of the Gernert-Castleman Lumber Company, advised the plaintiff by letter, that "I have arranged to sell the McLendon mill outfit in connection with the tract of timber purchased by Gernert-Castleman Lumber Company, to E. V. Sanders. He is to pay $2500.00 for the mill outfit, and is to pay for the timber $200.00 more than it has cost to date, including interest on what we have paid on it. He is to pay the amount we have paid on the timber in cash, and is to give a four months' note for the mill, bearing the date of maturity of the McLendon note, bearing 8% interest. I take it for granted that you will accept this note, as Mr. Sanders is worth $200,000.00, and his note is good for any amount that he would give it for, at least it is so considered."

On February 20, 1924, the plaintiff, "Gernert Brothers Lumber Company," by letter to Gernert-Castleman Lumber Company, replied: "We are in receipt of your letter of February 18th and note you have sold the Griel timber together with the McLendon mill and are herewith returning deed to land property (properly) executed. As I am not familiar with the description of this property, please check over same so as to be sure we are deeding the right land. We will accept E. V. Sanders' four months' note against the mill holding the mortgage we have against it until the note is paid. You can mail us Sanders' note for the $2500.00 and when paid we will forward McLendon balance due him together with papers we hold against this outfit. The McLendon note which we renewed is due March 16th, so please date Sanders' note accordingly and be sure and have it reach us on or before that date as we must use this against the McLendon note at our bank."

The witness Gernert testified: "All of the transactions were through the Gernert-Castleman Lumber Company. The letter of February 18, 1924, was written by Mr. Castleman as Manager of the Gernert-Castleman Lumber Company to the Gernert Brothers Lumber Company regarding the proposal to sell the mill to Mr. Sanders. Mr. Castleman had handled the financing of the mill with McLendon before this sale. Upon receipt of his letter of February 18th we wrote him on February 20th, authorizing him to make the sale of the mill." * * * I own $2000.00 of the capital stock of the Selma or Alabama Company, and my brother owns $2000.00. The Company was controlled by my brother Herbert and by me. The first note we received from Mr. Sanders was in lieu of the McLendon note. When we received the note from Mr. Sanders, I do not know of (if) the McLendon note was sent back to McLendon or to Mr. Sanders. We have the notes in our file and they have not been marked paid. We accepted the Sanders note as a substitute for the McLendon note. We didn't send the note back to McLendon. The Gernert-Castleman Lumber Company did

its banking at Selma and some of the notes were endorsed by Mr. Castleman as an officer of the Company, and when he failed to endorse the notes *sent to the home office*, then my brother or I applied (supplied) the endorsement."

In respect to the timber transaction, referred to in the letter of February 18th and the reply thereto, Gernert testified: "At the time of the sale of the mill to Mr. Sanders, we had paid, I mean by we, the Gernert Brothers Lumber Company, Griel Brothers about $1,000.00 on the timber and Mr. Sanders was due to pay that $1000.00 and $200.00 more. The sale of the mill was in connection with the sale of the timber, it was one transaction. No payment has been made on the last note, and Mr. Sanders hasn't paid but $700.00 on the whole transaction. The sale of the timber and the mill was one transaction."

The evidence is without dispute that the principal object for which the plaintiff, Gernert Brothers Lumber Company, was incorporated was "of making advances on lumber to saw mills as the lumber was placed on sticks (stacked) by them;" that the advances were secured by a bill of sale on the lumber and notes were taken for the advances in the name of the Gernert-Castleman Lumber Company. "These notes were then forwarded to Gernert Brothers Lumber Company at Louisville, Kentucky, where they were discounted and banked by them and the proceeds remitted to Gernert-Castleman Lumber Company to make the advances on the stock. The lumber was sold for the mills on a ten per cent. commission basis and the mills paid eight per cent. for the money advanced."

■ Taking the testimony as a whole, not overlooking the statement of the witness Gernert, that "Mr. Dayton Castleman did not represent Gernert Brothers Lumber Company at any time, nor was he authorized to act as agent for the Gernert Brothers Lumber Company," it is clear that Gernert-Castleman Lumber Company was not only the agent of the plaintiff in respect to the sale of the sawmill, which was then in the possession of McLendon who claimed it, but that the Alabama Corporation was the general agent and arm of the plaintiff in conducting its advancing business; and though the note taken from Sanders was made payable to the Alabama Corporation, in agreement with the general course of conducting the plaintiff's business in Alabama, plaintiff was the beneficial owner of the note, and is not an innocent purchaser in due course.

■ It is a familiar principle of law that knowledge or information which comes to an agent in the transaction of business of the principal is in law notice to the principal. Hall & Brown Woodworking Machine Co. v. Haley Furniture & Mfg. Co. et al., 174 Ala. 190, 56 So. 726, L. R. A. 1918B, 924.

■ The evidence is without dispute as to the agreement in respect to the sale of the mill —that it was to be delivered f. o. b. cars at Cecil or London, Ala.; that it. has never been delivered, for the' reason that McLendon refused to surrender its possession. The evidence is also without dispute that the plaintiff did not surrender or offer to surrender to the defendant the only claim it had a right to sell —the notes and mortgage executed by Mc-Lendon which represented the purchase money, and they were not satisfied—and defendant acquired nothing for his obligation. Sylacauga Lodge, No. 200, F. & A. M. v. McGhee, 17 Ala. App. 52, 81 So. 689.

For the reasons stated, under the issues framed by the pleadings, the affirmative charge requested by the defendant should have been given, and its refusal was reversible error.

Reversed and remanded.

ANDERSON, C. J., and SAYRE and THOMAS, JJ., concur.